UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States of America,

v.

Sedgwick Williams and
Tai Hon La

Case Nos. 19 CR 932-1
19 CR 932-3

Honorable Jorge L. Alonso

**Memorandum Opinion and Order**

Before the Court are Defendant Sedgwick Williams's motion for a new trial [493] and Defendant Tai Hon La's motion to vacate one count of his conviction [498].[1] As explained below, the Court denies both motions.

**Background**

In May 2024, Defendants Williams and La went to trial on charges related to alleged kidnappings in Naperville, Westchester, and South Holland, Illinois. Before trial, the government moved to exclude evidence or argument about the conduct of its investigation—specifically about its non-pursuit of other individuals as suspects. In presenting argument on the government's motion, the parties focused on the fact that certain DNA samples recovered from the Chevy Malibu that was used in the Naperville incident generated investigatory "hits" in the law enforcement Combined DNA Index System, or "CODIS," to three individuals other than Williams. Williams's attorney claimed that she wanted to introduce the evidence of those CODIS hits to suggest that people other than Williams committed the Naperville kidnapping. After

---

[1] The Court denies Defendant La's prior motion to vacate [497] as moot and superseded by his corrected motion [498].

1

hearing argument, the Court granted the government's motion to exclude, finding that the evidence Williams sought to elicit regarding the CODIS hits offered marginal relevance at best which was outweighed by the risk of prejudice, unfairly confusing and distracting the jury, and inviting the jury to speculate about what the government's investigation might have uncovered had it proceeded differently. ECF No. 406; Tr. 1276–77.

The jury ultimately found Williams guilty of all charged counts as to him (Counts 1–8). The jury found La guilty on Count 1 (kidnapping conspiracy), Count 8 (attempted kidnapping related to the South Holland incident), and Count 9 (being a fellow in possession of a firearm), but did not reach a unanimous verdict as to Count 2 (kidnapping related to the Naperville incident).[2]

Following the verdict, Williams filed a motion for a new trial and La filed a motion to vacate his conviction as to Count 1 only, which the Court now considers.[3]

## Discussion

The Court considers first Williams' motion for a new trial and then La's motion to vacate.

### I. Williams's motion for a new trial

Williams moves for a new trial due to the Court preventing him from eliciting testimony from the government witnesses that samples from the Chevy Malibu generated hits in the CODIS database to three individuals other than Williams. Williams specifically argues that the Court's exclusion of the CODIS hits violated the Confrontation Clause and should have been admitted as relevant and not unfairly prejudicial. The Court disagrees.

---

[2] The other counts in the indictment were not brought against La.
[3] The government responded to both motions. Williams filed a reply; La did not.

2

A court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). This includes "situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant's right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "A Sixth Amendment violation occurs when cross-examination limitations prevent the defendant from exposing a witness's bias or motivation to lie, or when they deny the defendant the opportunity to elicit testimony that would be relevant and material to the defense." *United States v. Rivas*, 831 F.3d 931, 934 (7th Cir. 2016) (quotation marks and citations omitted). But "[a]lthough the Sixth Amendment confrontation clause guarantees defendants the right to cross-examine witnesses . . . the trial judge retains broad discretion in limiting the extent and scope of cross-examination." *United States v. Robbins*, 197 F.3d 829, 844 (7th Cir. 1999) (citation omitted); *see also Rivas*, 831 F.3d at 934 (adding, "But that does not mean a judge cannot impose any limits on cross-examination"). Rather, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also Hinkle v. Neal*, 51 F.4th 234, 245 n.7 (7th Cir. 2022) ("Under the Confrontation Clause cases that the dissent presents, trial judges have 'wide latitude' to curtail cross-examination on matters that would confuse the issues or are only 'marginally relevant.'" (quoting *Van Arsdall*)).

At the outset, the Court notes that Williams has tried to claim that he did not seek to offer the CODIS hits to impugn the government's investigation but instead to point to third parties as

3

the perpetrators to exculpate Williams. Whatever fine distinction Williams has attempted to make in presenting his arguments did not bear out. Williams's attorney claimed not to be trying to question the government's witnesses about a failure to pursue certain leads and attempted to explain that the evidence instead would be offered simply to "[p]oint to others." Tr. 1274. But his attorney also stated that "[t]he fact that in this investigation those were not pursued is relevant to Mr. Williams's defense," suggesting that Williams was indeed pursuing this evidence to impugn the government's investigation. Tr. 1267; *see also id.* 1191–92 (stating, "our position is there was tunnel vision," and "all of that is about the investigation"), 1266 (stating that "the CODIS hits . . . cannot be introduced for the truth . . . . But that's not what we're trying to do"). Williams's arguments and "tunnel vision" case theory at trial thus somewhat belie his current claim that he did not intend to present evidence of the CODIS hits to impugn the government's investigation.

Regardless, the Court exclusion of Williams' proposed questioning about CODIS hits was a reasonable limitation on cross-examination. As Williams acknowledges, a CODIS hit is merely an "investigative lead" and can provide probable cause—but it is not a DNA match for evidentiary purposes. Indeed, the FBI lab reports documenting the CODIS hits identify them as "possible DNA associations" and remarked that "[c]onfirmation samples from the identified suspects must be acquired to provide a conclusion about these possible DNA associations." ECF No. 510-1. The mere CODIS hits on their own offered, at best, meager relevance as to who was involved in the Naperville kidnapping, as it only suggested a possibility that others may have been in the Malibu at some point and would have required additional DNA analysis. By contrast, there was a substantial danger that introducing that evidence would have improperly impugned the government's investigation and confused the jury as to that investigation, the meaning of the

4

CODIS hits, and the ultimate issues they were charged to decide. *See United States v. Estell*, 641 F. App'x 552, 556 (7th Cir. 2016) ("[T]rial judges have discretion to limit argument on tangential issues that could confuse the jury, and that includes a defendant's complaints about the adequacy of the government's investigation."). The Court's prior ruling prohibiting Williams' proposed questioning regarding the CODIS hits therefore did not violate the Confrontation Clause and does not warrant a new trial. *See United States v. Beavers*, 756 F.3d 1044, 1052 (7th Cir. 2014) ("[T]he Constitution does not require the admission of irrelevant evidence (or other types of evidence whose relevance is outweighed by other important considerations)[.]").

Williams points to a Kansas state case in which the court upheld the inclusion of testimony regarding CODIS hits despite an alleged risk of undue prejudice. *State v. Dixon*, 60 Kan. App. 2d 100, 118, 492 P.3d 455 (2021). But in that case, the appellate court emphasized "the fact that the CODIS evidence was followed by substantial testimony from [the witness] about further DNA testing and her statistical analysis of that testing." *Id.* The witness "explicitly stated that a CODIS hit is merely an investigative lead" that required further testing, which she conducted and testified about, and thus the evidence of the CODIS hit was merely a starting point and was accompanied by substantial additional statistical analysis. *Id.* That is not the case here. Instead, Williams attempted to solicit the bare fact of the CODIS hits, without any additional analysis or contextualization. *See, e.g.*, Tr. 1191 ("[W]e're not going to argue that, somehow or another, a CODIS hit is reliable or unreliable."). This ran a serious risk of confusing the jury and unfairly prejudicing the government's case; thus, the evidence of the CODIS hits was properly excluded. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-

5

examination that is effective in whatever way, and to whatever extent, the defense might wish." (emphasis in original)). The Court therefore denies Williams's motion for a new trial.

## II. La's motion to vacate conviction as to Count 1

Defendant La moves to vacate his conviction on Count 1 for kidnapping conspiracy because that count required an agreement to kidnap multiple people and the jury only convicted La on one attempted-kidnapping charge (Count 8)—it did not reach a verdict as to his other kidnapping charge (Count 2). In La's view, the jury could not find him guilty as to only one kidnapping but find him guilty as to a conspiracy to kidnap multiple people, and the government did not present evidence that La otherwise conspired to kidnap multiple people. The Court disagrees.

First, there was evidence at trial that La had conspired to commit multiple kidnappings, not merely the one for which he was convicted. For example, and as La's counsel indicated during his closing argument, the government presented evidence that La had planned to participate in the Westchester kidnapping but was unable to do so due to a family emergency—which supported a conviction for La conspiring to kidnap multiple people even if he ultimately participated in only one kidnapping. The government also points to other evidence offered at trial regarding La's involvement in the kidnapping conspiracy, which at the end of the day offered enough for the jury to conclude that La joined a conspiracy to kidnap multiple people even if it did not convict him for the Naperville kidnapping charged in Count 2. Of course, the government also presented evidence that La had participated in the Naperville incident, though the jury did not reach a verdict on that count.

Second, the Court may not unduly speculate on what the jury's non-verdict on the Count 2 kidnapping charge might mean—it does not necessarily mean as a legal matter that La could

6

not have conspired to commit the Naperville kidnapping even though he wasn't ultimately convicted of that kidnapping. *See Yeager v. United States*, 557 U.S. 110, 121–22 (2009) ("[T]here is no way to decipher what a hung count represents. . . . To ascribe meaning to a hung count would presume an ability to identify [what] factor was at play in the jury room. But that is not reasoned analysis; it is guesswork."). To the extent the outcomes for Counts 1 and 2 are inconsistent, an inconsistency can happen for many reasons and generally does not require nullifying the guilty verdict. *See United States v. Powell*, 469 U.S. 57, 69 (1984) ("[T]here is no reason to vacate respondent's conviction merely because the verdicts cannot rationally be reconciled."); *United States v. Brown*, 934 F.2d 886, 889 (7th Cir. 1991) ("[D]efendants facing inconsistent verdicts should not benefit from the inconsistency by a nullification . . . of the guilty verdicts."). Such inconsistencies "may occur for various reasons, including mistake, compromise, or lenity." *United States v. Askew*, 403 F.3d 496, 501 (7th Cir. 2005); *see also United States v. Castillo*, 148 F.3d 770, 774 (7th Cir. 1998) ("When a jury returns inconsistent verdicts, it may do so for reasons other than a determination of innocence[.]"). Therefore, the Court may not and will not "question the wisdom of the jury's verdict in this manner." *Castillo*, 148 F.3d at 775 (affirming conviction on a conspiracy charge notwithstanding acquittals on related drug-possession charges). Therefore, because the jury's conviction as to Count 1 and non-verdict as to Court 2 were not necessarily inconsistent, and because there is no indication that the jury was improperly instructed as to the relevant counts, the Court will not vacate La's conviction as to Count 1.

## Conclusion

The Court denies Defendant Sedgwick Williams's motion for new trial [493]. The Court denies Defendant Tai Hon La's motion to vacate [497] as superseded and moot. The Court denies Defendant La's motion to vacate [498].

**SO ORDERED.**                                    **ENTERED: April 30, 2025**

_____
**HON. JORGE ALONSO**
**United States District Judge**